## Courier-Journal & Louisville Times Co. v. Akers.

Oct. 19, 1943.

Wheeler & Shelbourne for appellant.

Adrian H. Terrell for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

On Sunday morning, January 5, 1941, about seven o'clock, the appellee, Mrs. Barney Akers, stumbled and fell over some newspapers in the vestibule of Katterjohn's Drug Store in Paducah and sustained an injury to her arm and shoulder. The newspapers were shipped to Paducah by the appellant, the Courier-Journal and Louisville Times Company, and Howard Randle, manager and operator of the Yellow Cab Company, got them at the railway station for the purpose of delivering them to three places in the city. For this service he was paid by the month by the appellant, according to the number of trips he made during that time.

Randle testified, as a witness for Mrs. Akers, that he deposited two bundles and about 10 loose newspapers in the vestibule of the Drug Store against the bottom of the screen door between three and four o'clock in the morning. Mrs. Akers testified she entered the store about seven o'clock, obtained some change from the clerk and started out the door to catch the bus. From her testimony, and that of other witnesses, it appears the newspapers were, at that time, somewhere between the entrance to the store and the point where Mrs. Akers intended to catch the bus.

Mrs. Akers brought this action against the appellant on the ground that Randle was its agent or employee and his act of placing newspapers in the vestibule of the Drug Store was one of negligence which caused her injury. This appeal is from an $800 judgment in favor of the appellee.

The principal grounds urged for reversal are that the evidence does not establish an agency between the appellant and the Yellow Cab Company, and that Randle

was acting as an independent contractor. The evidence on this point is confined to the testimony of Randle, which is to the effect that he was the owner and manager of a taxicab business operating under the firm name of Yellow Cab Company; he had a verbal agreement with the local manager of the appellant to pick up the papers at the railroad station and deliver them to three places in town; and he was paid on a monthly basis according to the number of trips made. His testimony regarding the contract, or arrangement, is brief. When asked about the terms of his agreement and his duties his reply was, "Well, I was to meet the train when it arrived in Paducah from Louisville, and pick up the newspapers that come in on that train, at Union Station, and deliver them to different parts of the town; made a delivery at 11th and Caldwell Streets at Katterjohn's Drug Store, and made one at the Bus Station and carried one to the Courier-Journal Office." When asked what the agreement was as to leaving the papers at Katterjohn's he replied: "He just gave me the different stations where to leave them—to leave them in specified places, give me the address of Katterjohn's Drug Store at 11th and Caldwell, and the Greyhound Bus Station and the office." It is insisted by the appellee that, since the appellant directed Randle to meet the train, pick up the newspapers, deliver them to certain addresses in town and leave them in specified places, and was subject to dismissal at any time, he could be nothing more than an agent or employee.

One who is engaged in a distinct occupation or business, using his own means or instrumentalities in the execution thereof, and agrees to perform service for another according to his own method and manner, free from direction and control of the principal in all matters relating to the performance of the work, except as to result, is an independent contractor. It is conceded that Randle was engaged in business as a common carrier for hire, that he used his own vehicles in the work and was paid according to the number of trips he made. In applying the rule in this case we will determine from the evidence what results the appellant desired to obtain and then to what extent it exercised control, supervision or direction over the person employed to accomplish these results. Clearly the appellant's interest was confined to the physical act of getting the newspapers delivered at Katterjohn's Drug Store, and it employed the Yellow Cab Com-

pany for that purpose. It did not attempt, by agreement or otherwise, to direct, oversee, or take charge of the manner or method of delivery; it did not designate any particular or specific place about the premises where the newspapers were to be deposited; nor did it prohibit or caution against leaving them one place or another in or about the store. Randle used his own automobile; he could have used a truck, or any other vehicle suitable to him, and he operated at his own expense. He was at liberty to do the work in his own way, choose the manner and method of delivery which suited him best and was responsible to the appellant for only one thing, namely, delivery of the papers. "A principal employing another to achieve a result but not controlling nor having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. * * *'' Restatement, Agency, Section 250.

Another position taken by Mrs. Akers is that Randle could have been nothing more than an agent or employee of the appellant, because he had no enforceable contract and could have been discharged at any time. Assuming, as Mrs. Akers contends, that Randle was an agent, under the facts in this case he would still come under the rule in Restatement, Agency, Section 220, p. 485, wherein it is said: "* * * An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors' and do not cause the person for whom the enterprise is undertaken to be responsible. * * *'' Whether the contract was binding or not is immaterial in this case. The same question was raised regarding a similar contract in the case of Ruth Bros. v. Stambaugh's Adm'r, 275 Ky. 677, 122 S. W. (2d) 501, 505. There it was said: "Even though we might say that no binding contract was entered into between Ruth and Duncan for the hauling of all stone to be hauled on this road, that fact alone could not operate to prevent the court from determining that Duncan was an independent contractor, if, in fact, all other proven circumstances in the case showed beyond question that he was operating independently during such time as he actually did haul and with-

out any supervision or control on the part of his employer.''

The final question to be determined is whether the case should have been submitted to the jury. A decision of this question is also controlled by the rule announced in the Ruth Bros. case, supra, where this Court said: "* * * In case of an oral contract, if there is no material dispute in the testimony, whether the employee is an independent contractor presents a question for the court; but if there is a conflict in the evidence, or if different inferences may be drawn from the testimony concerning the oral contract, the matter is for the jury to determine.'' Certainly there is no dispute in the testimony nor conflict in the evidence concerning the oral contract, and every reasonable inference to be drawn therefrom forces us to the conclusion that Randle was an independent contractor. Therefore, the appellant's motion for a directed verdict should have been sustained.

Judgment reversed with directions to set it aside, and for proceedings consistent with this opinion.