242 P.2d 971

**HAYWARD v. YOST et al. (two cases).**

Nos. 7789–7792.

Supreme Court of Idaho.

April 3, 1952.

Rehearing Denied April 29, 1952.

418

W. W. Wander, Nampa, Smith & Ewing and Meek & Miller, all of Caldwell, for appellants.

Cleve Groome, Caldwell, for respondents.

THOMAS, Justice.

There are two companion cases growing out of an accident at Lincoln, California; in one action Joseph B. Hayward, Jr., a minor, by and through his guardian ad litem, Joseph B. Hayward, brought an action to recover damages in the sum of $40,000 for personal injuries sustained and alleged to have been occasioned by the negligence of Speer personally and as the agent and servant of The Boise Valley Livestock Commission Company, a partnership; the other action is by the father and mother of the minor, to recover $20,000 general damages for the injuries to their minor son, and $605 for medical and hospital expense, arising out of the same facts. The two cases, by order pursuant to stipulation, were consolidated for trial and were brought to this court by stipulation and order on a single transcript.

The members of the partnership at the time of the accident were R. L. Yost, George Slote and John W. Smeed; Smeed died and the trustees of his estate were made parties to the actions; before the case came to trial Slote died, and the Executrix of his will was by stipulation and order substituted as party defendant in his place and stead. As to the other parties defendant, a nonsuit was granted at the conclusion of plaintiffs' evidence.

The accident occurred at Lincoln, California, on May 31, 1949, when Joseph B. Hayward, Jr., then of the age of nearly seven, was going from school to his home at the noon recess; it occurred upon the public highway near the school grounds; this young boy was crossing the highway and was struck by a car operated by the defendant Speer; without attempting to detail the evidence adduced at the trial, it may be stated that there is sharp conflict as to the speed the car was traveling, such conflict ranging from 10 miles to 35 miles an hour in a restricted zone. Likewise, there is conflict as to whether the boy was within the pedestrian lane, and as to whether or not he paid any attention to the condition of the highway before he attempted to cross but, without further mention of the evidence in these various respects, suffice to say that as to negligence and contributory negligence it presents many sharp conflicts.

The jury returned a verdict for the minor in the sum of $10,000 and a verdict for the parents in the sum of $3,605, and judgments thereon were rendered. The appeals were taken from both judgments and from the respective orders denying nonsuit, directed verdict, judgment notwithstanding the verdict, mistrial, and new trial.

Many assignments of error were made which we will consider in the order set forth below.

■ It is urged by appellants that the court erred in denying appellants' motion for nonsuit, motion for directed verdict, and motion for judgment notwithstanding the verdict, on the ground and for the reason, among others, that the evidence does not establish negligence of the defendant Speer, but does establish contributory negligence of Joseph B. Hayward, Jr. The evidence in many material respects cannot be reconciled; a motion for nonsuit and for directed verdict, as well as a motion for judgment notwithstanding the verdict, admits the truth of the adversaries' evidence and every inference of fact which may be legitimately drawn therefrom. Stowers v. Union Pacific Ry. Co., Idaho, 237 P.2d 1041; Stearns v. Graves, 62 Idaho 312, 111 P.2d 822.

■■ This court has consistently held that where the evidence on material facts is in conflict or where on undisputed facts reasonable and fair-minded men may differ as to the inferences and conclusions to be drawn therefrom, or where different conclusions might reasonably be reached by different minds, the question of negligence and contributory negligence, as well as proximate cause, is one of fact to be submitted to the jury and not a question of law for the court. Stowers v. Union Pacific Ry. Co., supra; Stearns v. Graves, supra. The court did not err in denying appellants' motion for nonsuit or for directed verdict or for judgment notwithstanding the verdict as against Speer.

■ Appellants urge that the court erred in the admission of respondents' Exhibit

"L". The exhibit is a map prepared by the city engineer of Lincoln, California, and made from field notes of the engineer taken on the day of the accident and at the scene of the accident; the map depicted the physical facts as found by the engineer in the vicinity where the accident occurred; the map also depicted the location and distance of skid marks appearing on the pavement and which were delineated on the map; the engineer was not present at the time of the accident and had no personal knowledge that the skid marks depicted upon the map were in fact made by the car of Mr. Speer. However, the chief of police, who called him to the general area where the accident occurred, gave him general instructions to set forth all the physical facts as they appeared to him, and told him that the skid marks were those made by the car of Mr. Speer; the policeman also testified that Mr. Speer informed him soon after the accident that those were his skid marks. Such maps are competent evidence and admitted for the purpose of supplying a better understanding of the relative location of objects involved in the litigation, and are received in the discretion of the trial court for the purpose of illustration, to better aid the jury. Proper foundation was laid for the admission of such exhibit, and its admission was not erroneous. Kleinschmidt v. Scribner, 54 Idaho 185, 30 P.2d 362; Papesh v. Weber, 27 Idaho 557, 149 P. 1064; see also 22 C.J. Sec. 1114, p. 910, 32 C.J.S., Evidence, § 730.

Appellants assign as error improper remarks and arguments by counsel for respondents to the jury. The asserted remarks were not taken down by the court reporter and do not appear in the transcript of the proceedings otherwise than in the motion for mistrial dictated into the record after the jury had retired; the court minutes show that after counsel for respondents completed his closing arguments to the jury, counsel for appellants objected to the argument of counsel for respondents and moved the court for a mistrial, which motion was denied; that the court admonished the jury as to the facts and the jury retired to consider its verdict; the court minute further shows that thereafter and in the absence of the jury the defendants moved the court for a mistrial, which was denied (Tr. f. 1333); the minute entry does not reflect what remarks or arguments of counsel were objected to or the scope of such objection.

█ For a question of misconduct of counsel to be considered on appeal, the record must sufficiently set out the matters relating thereto and this court is limited to a review of such questions as are properly raised, preserved and submitted by sufficient record. 4 C.J.S., Appeal and Error, §§ 1167, 1206, pp. 1660, 1704. The case of Stewart v. City of Idaho Falls, 61 Idaho 471, 103 P.2d 697, relied upon by appellants, is not out of harmony with but supports this general proposition; in that case, but not here, there was presented in the

reporter's transcript sufficient record of the remarks of counsel and objections thereto and ruling thereon, to invoke a ruling of the court.

■ The objection to the remarks by counsel, to be made available on appeal, should have been made at the time the remarks were made. Ohio & M. Ry. Co. v. Wrape, 4 Ind.App. 100, 30 N.E. 428; Symons v. Great Northern Ry. Co., 208 Minn. 240, 293 N.W. 303; Eilola v. Oliver Iron Mining Co., 201 Minn. 77, 275 N.W. 408. This means that ordinarily an objection comes too late for the purpose of review on appeal, if made for the first time after the jury has retired or the cause has been submitted to them, or after the close of the arguments, or on motion for new trial or otherwise, after the verdict has been rendered. 4 C.J.S., Appeal and Error, § 297 (b), p. 594.

■ It is urged by appellants that improper remarks by counsel before the jury are preserved for consideration and are available on appeal where such remarks are brought into the record by affidavits attached to a motion for new trial, as was done here. Improper remarks of counsel in closing arguments to the jury are not available as a ground for reversal where such remarks are brought into the record only by affidavits executed in support of the motion for new trial. Duncan v. Vance Drilling Co., 191 Okl. 389, 130 P.2d 290; Westgate Oil Co. v. McAbee, 181 Okl. 487, 74 P.2d 1150; Enid Transfer & Storage

Co. v. Fisher, 169 Okl. 484, 37 P.2d 825; City of Tulsa v. Horwitz, 151 Okl. 201, 3 P.2d 841; Phillips v. American Car & Foundry Co., Mo.App., 287 S.W. 810; Blankenship v. A. M. Hughes Paint & Glass Co., 154 Mo.App. 483, 135 S.W. 970; Mowry v. Norman, 223 Mo. 463, 122 S.W. 724; State v. Price, 186 Mo. 140, 84 S.W. 920; Feary v. Metropolitan Street Ry. Co., 162 Mo. 75, 62 S.W. 452; Norris v. Whyte, 158 Mo. 20, 57 S.W. 1037; Ellis v. Barkley, 160 Iowa 658, 142 N.W. 203.

■ Parties are bound by the record they make in the district court and there is nothing in our practice to justify the use of affidavits to establish facts which should have been made of record there, but were not. Carey v. Lafferty, 59 Idaho 578, 579, 86 P.2d 168.

■ On the record presented to this court the asserted error with reference to the improper remarks of counsel was not preserved for review by this court.

The appellants claim that the verdict in each case was excessive. The jury returned a verdict of $10,000 for the injuries to the boy; and a verdict of $3,605 to the parents, which included $605 for hospital and doctor bills and other medical care.

The boy was near seven years of age at the time of the accident. Following the accident the boy was hospitalized for a period of some six weeks, intermittently, and was under the care of a doctor for several months thereafter and was not fully re-

covered from the injuries at the time of the trial.

Since the injuries the boy has been quite nervous and becomes easily upset when associating with others and it has become difficult for other children to play with him.

The boy suffered both external and internal injuries in and about his body and nervous system, and suffered severe shock, cerebral concussions, fracture of the skull extending from the center of the left parietal bone downward and anteriorly to the temporal-parietal suter and at the base of the skull, and lacerations of the scalp; he also suffered multiple contusions and abrasions causing intro-abdominal hemorrhage which resulted in generalized weakness; there was a deep hole on the left side of his head, and when first taken to the hospital he was unconscious and was in critical condition; since the injury he has continually suffered with a headache and has not been cooperative or easily controlled; the medical testimony in some respects is in conflict, but such conflicts are for the jury. There is medical testimony that his reflexes were hyper-active but equal, and that he cannot maintain his position without wavering, and he has residual damage to the brain which is rather permanent and it cannot be stated with certainty how long the injury may last. There was medical testimony to the effect that he may later develop severe headaches and be afflicted with Jacksonian type seizures and even partial paralysis of certain types.

At the time of the injury the boy was attending school and his work was average, but since he has made little or no progress in school and his parents have found it necessary to aid him in his home work and to cooperate with his teachers in an effort to improve his power to retain and remember things which he had been taught in school. The extent of possible future damage to the brain because of the scar tissue thereon was not predictable at the time of the trial; the results of his injury are permanent.

The boy has a life expectancy of 57.22 years, that is, he would be expected to live to be of the age of sixty-five years.

The parents may maintain an action for the injury of a minor child. Sec. 5-310, Idaho Code; in every such action damages may be given as under all the circumstances of the case may be just. Sec. 5-311, Idaho Code. Elements which enter into the determination of such damages include contributions which the parents might reasonably have expected to receive from the earnings of such minor child until his majority, for which there is no precise measure, Richmond v. Moore, 103 Cal.App. 173, 284 P. 681, as well as the loss of protection, comfort, society and companionship. Checketts v. Bowman,. 70 Idaho 463, 220 P.2d 682.

426

The amount of damages to be allowed the child for personal injuries and also to his parents is primarily for the jury to determine and this court will not disturb such verdicts except where it clearly appears that the trial court abused its discretion. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457. The appellants raised the contention that the verdicts were excessive by their motions for new trial in each case; the trial court denied such motions for new trial and held that the verdicts were not excessive; such ruling by the trial court is entitled to weight in this court and will not be set aside in the absence of abuse of discretion. Koch v. Elkins, supra.

In determining the amount of damages to be awarded for personal injuries the jury and the court should consider existing economic conditions as they affect the value or purchasing power of money. Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386; Hooten v. City of Burley, 70 Idaho 369, 219 P.2d 651.

On many occasions verdicts have been awarded in excess of $10,000 for brain injuries suffered by minors, and the amounts thereof have been sustained on appeal as not being excessive. Graves v. Harrington, 177 Okl. 448, 60 P.2d 622; Mecchi v. Lyon Van & Storage Co., 38 Cal.App.2d 674, 102 P.2d 422, 104 P.2d 26; Conway v. Monidah Trust, 51 Mont. 113, 149 P. 711. See also collation of authorities in 16 A.L.R.2d at pages 94–107.

The facts in this case are not such that any excess appears as a matter of law or the amount is such as to suggest at first blush the presence of passion or prejudice on the part of the jury and we cannot say, after carefully examining the evidence, and under the facts in this case, that either verdict is excessive or that the jury was motivated by passion and prejudice in returning the verdict in either case or that the trial court abused its discretion in refusing to set aside either verdict and grant a new trial. Garrett v. Taylor, supra; Checketts v. Bowman, supra; Bates v. Siebrand Bros. Circus & Carnival, 71 Idaho 318, 231 P.2d 747.

The assignment of error with reference to giving Instruction No. 38 and refusing to give two instructions requested by the appellants was not discussed either in the brief or in the oral arguments, nor were there any authorities cited in support of such assignment. Where appellant neither presents arguments nor submits authorities in support of an assignment of error, such assignment will not be considered on appeal by this court. Roberts v. Roberts, 68 Idaho 535, 201 P.2d 91; Koch v. Elkins, supra; Clark v. Alloway, 67 Idaho 32, 170 P.2d 425; Murphy v. Mutual Life Ins. Co. of New York, 62 Idaho 362, 112 P.2d 993.

It is the contention of appellants that the court erred in giving Instruction No. 16 with reference to the measure of damages

for parents in an action for injuries to a minor child; it is asserted that it was error for the court to instruct the jury that the parents may be awarded a reasonable amount for any worry or mental distress they may have suffered by reason of the injuries to their child.

The statute, Sec. 5-311, I.C., provides that "such damages may be given as under all the circumstances of the case may be just"; under this statute grief and anguish are not elements entering into the determination of such damages. Checketts v. Bowman, supra; Hepp v. Ader, 64 Idaho 240, 130 P.2d 859; 15 Am.Jur. Sec. 180, p. 597; 39 Am.Jur. Sec. 80, p. 726. It is a presumption that the jury after hearing all testimony and receiving the instructions of the court with reference to the amount of damages, took into consideration all elements of damages set out in the instructions of the court. Summerfield v. Pringle, 65 Idaho 300, 144 P.2d 214.

With respect to the cause of action by the parents against the defendants, it was prejudicial error for the court to give that portion of Instruction No. 16 which instructed the jury that it may, in its award to the parents, take into consideration the mental distress and worry suffered by the parents by reason of the injuries inflicted upon their child.

The remaining assignment of errors are interrelated and relate to the admissibility and the sufficiency of certain evidence by the respondents, offered and admitted over the objection of appellants, to prove the relationship of master and servant or principal and agent between Speer and The Boise Valley Livestock Commission Company. In order to better understand the disposition of these particular assignments of error it is deemed advisable to briefly detail this evidence in the sequence in which it was offered and received. The complaint alleges that Speer, the operator of the car, was the agent and servant of the partnership, engaged in buying and selling livestock and that at the time of the accident he was acting in furtherance of such business and as agent and servant of the partnership.

The plaintiffs introduced in evidence, over objection, certain signature cards of the First National Bank of Caldwell, Idaho, in which Speer, among others, was authorized to draw drafts on an account in such bank under the designation of The Boise Valley Livestock Commission Company.

Subsequently, over objection, Mrs. Hayward was permitted to testify that Speer told her about an hour after the accident that he was on his way to Gridley, California, to attend a livestock market, and that he was working for The Boise Valley Livestock Commission Company, buying and selling livestock. At the time of the reception of this evidence there was no evidence in the record which would tend to establish such relationship between Speer and the partnership except the evidence with reference to the signature cards.

One Sorenson, a witness for the plaintiffs, testified that Speer sold livestock through the Roseville Livestock Auction Yard at Roseville, California, operated by the witness, and identified certain cancelled checks aggregating in excess of $24,000 drawn on the account of the Roseville Livestock Auction Yard, payable to Speer or to Speer and Yost, one of the partners, for cattle sold through the Roseville Livestock Auction Yard, covering a period extending for some four months before and within two weeks of the accident; these checks were received in evidence over objection of the defendants. These checks bore the endorsement of either Speer or Yost and The Boise Valley Livestock Commission Company, and were deposited in The Boise Valley Livestock Commission Company account. Thereafter the chief of police of Lincoln, California, the municipality wherein the accident occurred, testified on direct examination, over objection, that Speer told him shortly after the accident and while he was making his investigation, that he worked for The Boise Valley Livestock Commission Company; the admission of this evidence was not assigned as error; upon cross-examination of the chief of police the defendants introduced in evidence over objection by the plaintiffs, Defendants' Exhibit No. 2, which was the accident report made by the officer soon after the accident, in which Speer, in response to questions, stated among other things that he was employed by The Boise Valley Livestock Commission Company as a cattle buy-

er; further reference to this particular evidence under cross-examination will be discussed again at another point in this opinion; Mr. Yost, one of the partners, thereafter testified that the partnership honored the drafts drawn by Speer for purchase of livestock, and that the checks drawn on the Roseville Bank, made payable to Speer and Yost and endorsed by them, were deposited in The Boise Valley Livestock Commission Company's account; he further testified that the only benefit to the partnership from such transactions arose when cattle were sold through the ring of the partnership which resulted in the partnership receiving a commission; he also testified that there was but one account in the bank for all who bought cattle, as Speer did, but that the partnership maintained separate accounts in its partnership books; that each individual guaranteed his own account, and that each of the three partners could arrange to draw drafts on this same account to purchase cattle, and were charged a commission as others were for any sales through the ring.

Speer, on direct examination was not questioned as to any statements he had made either to Mrs. Hayward or to the chief of police, or as to any relationship he had with the partnership or with reference to his occupation or the purpose of his trip to California.

First it is the contention of the appellants that the testimony of Mrs. Hayward, admitted over objection, with refer-

ence to alleged statements that Speer made to her about an hour after the accident, to the effect that he was on his way to Gridley, California to attend a livestock market and that he was working for the partnership, buying and selling cattle, were improper and prejudicial for the reason that declarations of an alleged agent or servant made out of the presence of the alleged principal or employer are not admissible to prove the relationship of agency or master and servant under the res gestae rule, or otherwise. The declarations of an alleged agent made outside the presence of the alleged principal are, of themselves, incompetent to prove agency, Cupples v. Stanfield, 35 Idaho, 466, 207 P. 326, yet where the agency has been established by independent evidence, the declarations as corroborative evidence are admissible. Lightner v. Russell & Pugh Lumber Co., 52 Idaho 616, 17 P.2d 349; see also Ennis v. Smith, 171 Wash. 126, 18 P.2d 1; Bell v. Washam, 82 Ga.App. 63, 60 S.E.2d 408; 3 C.J.S., Agency, § 322.

There was no evidence from which the fact of agency might be inferred at the time Mrs. Hayward testified as to the declarations made to her by Speer, and at that time such declarations were not admissible and it was error for the court, over objection, to admit such evidence. Ashley v. Safeway Stores, 100 Mont. 312, 47 P.2d 53; Ennis v. Smith, Wash., supra; Myers v. McMaken, 133 Neb. 524, 276 N.W. 167.

We will now return to the cross-examination of the chief of police; under such cross-examination, defendants introduced in evidence the investigation report of the chief of police wherein it shows on its face that Speer was employed by the partnership as a cattle buyer. Evidence elicited on cross-examination is regarded as testimony on the part of the party calling the witness, Nulsen v. Nulsen, 3 Cal.App.2d 407, 39 P.2d 509, and evidence produced by the defendant tending to make out the plaintiff's case must be considered with testimony offered by plaintiff, Merrill v. Missouri Bridge & Iron Co., 69 Or. 585, 140 P. 439; Murray v. City of Butte, 35 Mont. 161, 88 P. 789, and the party who offers such evidence cannot complain because it corroborates the position taken by the opposite party. Davenport v. Stratton, 24 Cal.2d 232, 149 P.2d 4; Johnston v. McKean, 177 Or. 556, 162 P.2d 820; a plaintiff may have the benefit of facts favorable to him, developed by defendant's evidence, which are not contradictory to his own statements or to the fundamental theory of the case. 32 C.J.S., Evidence, § 1046, p. 1134. Furthermore, documentary evidence introduced by one party to prove a particular fact or for a particular purpose, may generally be weighed or considered for or against either party. 32 C.J.S., Evidence, § 775, p. 700. While such evidence may be impeached or contradicted by competent substantial evidence offered by the defendant, 32 C.J.S., Evidence, § 1040, p. 1104; 20 Am.Jur. Sec.

430

915, p. 771, its admission in evidence corroborates other evidence of the plaintiff tending to establish a relationship of agency; while it was error to admit in evidence the declarations made by Speer to Mrs. Hayward at the time such evidence was offered and admitted, yet the error was not prejudicial, but harmless, as substantially the same evidence was introduced by defendants in Exhibit No. 2, Hackney v. Dudley, 216 Ala. 400, 113 So. 401; furthermore there was other testimony, independently of such extrajudicial statement of Speer which had a tendency to establish such relationship. Hiner v. Olson, 23 Cal.App.2d 227, 72 P.2d 890, 73 P.2d 945.

Where there are other corroborative facts and circumstances disclosed by the evidence, agency then becomes a fact question for the jury, Maynard v. Hall, 61 Ariz. 32, 143 P.2d 884, 150 A.L.R. 618; also where such statements relate to the mission and destination they tend to unfold the transaction and to establish the scope of agency; whether or not he was acting for his principal at the time of the collision was as important an inquiry as whether he was guilty of negligence; both are basic issues and his corroborative statements where pertinent to either are equally admissible in evidence, both questions being for the jury. Stevens v. Moore, 211 S.C. 498, 46 S.E.2d 73.

The manager of the partnership denied that Speer was either an agent or an employee of the partnership; admitted that Speer was authorized to draw drafts on The Boise Valley Livestock Commission Company account, First National Bank of Caldwell, Idaho, but that such an arrangement was on a personal guarantee basis with an object to further the livestock industry and centralize the pooling of cattle and to promote the business by those individuals who gave a guarantee and drew on the account; that the partnership did not participate in the profits or the losses, if any, but simply charged a commission for the sale of the cattle which went through its yards and that it had no money whatever in this particular account but arranged for such an account to be handled through the Company to establish credit and clarify the arrangements with the bank where the account was kept, and that the only relationship which existed between the partnership and Speer and other similar buyers was that of debtor and creditor, the partnership simply acting as a banking institution with no right to control the operations of Speer or others; that Speer had had such an arrangement and had been drawing on the account for about a year before the accident and was still doing so at the time of the trial; in rebuttal the plaintiffs called witness Locke, who had been a billing clerk for the partnership prior to and at the time of the accident; this witness testified that Speer billed cattle from the partnership stock yards to Roseville, California, and other places, and that Yost, one of the partners, instructed Locke on several occasions not

to ship cattle from the yards until Yost so advised him, because the cattle belonged to Yost and that he was in partnership with Speer; several shipments were held up on such instructions from Yost, who advised Locke that when Speer bought cattle that Yost had something to say about it and that he always directed Locke when the cattle should be shipped, and that on many occasions they were shipped to the Roseville Auction Yard.

■ The declarations of Speer to Mrs. Hayward, the checks drawn on the Roseville Livestock Auction Yard and deposited in the account of The Boise Valley Livestock Commission Company, the signature cards and the rebuttal testimony of the witness Locke, constituted some evidence of the relationship of agency, and no prejudicial error was committed in the admission thereof.

It is urged by the appellant partnership that even though the evidence be sufficient to establish the relationship of principal and agent, this without more is not sufficient to subject the principal to liability for the tortious act of such agent; in this respect it is contended that the decisive inquiry is whether or not The Boise Valley Livestock Commission Company had the right to control the details of the physical movements of Speer and the physical details as to the manner and mode of performance of his work.

■ Speer owned the car which he was driving and there is no presumption of agency or that he was on a mission for his principal at the time of the accident as would arise where the car is owned by the principal; furthermore, the burden is upon one who asserts agency not only to establish the relationship but also the character thereof. Manion v. Waybright, 59 Idaho 643, 86 P.2d 181.

There is no evidence that Speer was subject to authoritative control of The Boise Valley Livestock Commission Company in respect to the details of his work or as to how it should be performed; so far as the record is concerned these matters were entirely with him; for aught that appears in the record he could work when he pleased, seek out and select the parties from whom he would make purchases and to whom he would sell livestock; there is no evidence in the record as to who paid the expense of operation and maintenance of his car; so far as the record is concerned he was at liberty to do the work in his own way, choose the manner and method thereof which best suited him and, at most, his only responsibility to the principal would be for the results achieved; there is no evidence that the partnership had or exercised any right of direction, control or supervision as to the use of the car; neither is there any evidence that authority existed or was exercised by the partnership to direct Speer how to run his car. From aught that appears in the record the partnership had no more charge or control over Speer's

means and manner of transportation than if he had been traveling by plane, train, or bus, and there are no facts in the record from which it can be fairly inferred that his principal had or exercised any control over the details of his work or over the management or operation of his car.

The question frequently arises in cases such as this where as party, in driving his own car in carrying out his duties, and an accident occurs, as to whether there exists between such person and his principal such relationship that the principal is liable for tortious acts of such person in the operation of his car.

 It is our view that Speer was not an employee of The Boise Valley Livestock Commission Company; we are satisfied that the evidence would not support such a relationship; Nat'l Life & Accident Ins. Co. v. Morrison, 179 Tenn. 29, 162 S.W.2d 501; Mechem Agency, 1, 2; if there is any liability of the partnership for the tortious acts of Speer it must rest upon the relationship of principal and agent. We believe the rule set forth in Restatement of the Law of Agency by the American Law Institute, in Sec. 250, is sound and equitable in cases of this nature, and should be applied. Therein it is stated as follows:

"Except as stated in Sec. 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal."

Comment:

"A principal employing another to achieve a result but not controlling nor having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. * * * In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor."

The exceptions as stated in Sec. 251 have no application to this case.

The growth, development and application of the rule set forth in Sec. 250, Restatement of the Law of Agency, supra, is supported by the following cases and texts: Courier Journal & Louisville Times Co., v. Akers, 295 Ky. 745, 175 S.W.2d 350; Knight v. Hawkins, 26 Tenn.App. 448, 173 S.W.2d 163; Nat'l Life & Accident Ins. Co. v. Morrison, supra; American Nat'l

Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409; Henkelmann v. Metropolitan Life Ins. Co., 180 Md. 591, 26 A.2d 418; McCarthy v. Souther, 83 N.H. 29, 137 A. 445; Westcott v. Young, 275 Mass. 153, 175 N.E. 153; Haykl v. Drees, 247 App.Div. 90, 286 N.Y.S. 38; Atlas Life Ins. Co. of Tulsa v. Foraker, 196 Okl. 389, 165 P.2d 323; Redfield v. Chelsea Coal Co., 143 Kan. 480, 54 P.2d 975; Mitchell v. Maytag etc., Co., 184 Wash. 342, 51 P.2d 393; Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P.2d 553; Stockwell v. Morris, 46 Wyo. 1, 22 P.2d 189; Russell Products Co. v. Bailey, 162 Okl. 212, 19 P.2d 601; Counihan v. Lufstufka Bros. & Co., 118 Cal.App. 602, 5 P.2d 694; See also: 140 A.L.R. 1151; 117 A.L.R. 621; 112 A.L.R. 921; Weslowski v. John Hancock Life Ins. Co., 308 Pa. 117, 162 A. 166, 87 A.L.R. 787; Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 164 N.E. 77, 60 A.L.R. 1163; Kennedy v. Union Charcoal & Chemical Co., 156 Tenn. 666, 4 S.W.2d 354, 57 A. L.R. 739; 54 A.L.R. 627; 29 A.L.R. 470; 17 A.L.R. 621; 2 Am.Jur. Sec. 359, note 11, pocket part; 3 C.J.S., Agency, § 255, p. 188.

The growth of the doctrine of independent contractor involving such matters as here presented is ably and exhaustively treated in the case of Stockwell v. Morris, supra.

We have examined and carefully considered all errors assigned and conclude that the judgment in both cases, as to the defendant, The Boise Valley Livestock Commission Company, a partnership, should be and hereby is reversed and remanded to the court below with directions to dismiss; that the judgment in the case of Joseph B. Hayward and Delma T. Hayward, husband and wife, v. R. L. Yost, et al., as to the remaining defendant, Harry W. Speer, is reversed and remanded with directions to grant a new trial; that the judgment in the case of Joseph B. Hayward, as guardian ad litem of Joseph B. Hayward, Jr., a minor, v. R. L. Yost, et al., be and the same is hereby affirmed as against the defendant Harry W. Speer.

Costs of The Boise Valley Livestock Commission Company in both cases awarded to The Boise Valley Livestock Commission Company.

Costs of Harry W. Speer in the case of Joseph B. Hayward and Delma T. Hayward husband and wife, v. R. L. Yost, et al., are awarded to Harry W. Speer.

Costs of respondents in the case of Joseph B. Hayward, as guardian ad litem of Joseph B. Hayward, Jr., a minor, v. R. L. Yost, et al., are awarded to respondents and against Harry W. Speer.

PORTER and TAYLOR, JJ., concur.

KEETON, Justice.

I concur in the ultimate disposition made in the majority opinion in this case. I do not concur in some of the reasons given.

That one who attempts to establish the liability of another by reason of a relationship of principal and agent cannot establish such liability by hearsay declarations of the purported agent is so fundamental as to require no citation of authority.

While the relationship of principal and agent may be established by the testimony of the agent, the declarations of such alleged agent outside of a court are hearsay, and subject to some exceptions not at all applicable here, cannot be received to establish such agency.

The broad statement in the opinion " * * * where the agency has been established by independent evidence, the declarations as corroborative evidence are admissible * * *" is unnecessary to a decision in this case and the rule so stated is not applicable to the facts.

Exceptions to the rule that the declarations of an agent are inadmissible to prove the agency, such as res gestae statements made, and then only after the agency has been first established, and other exceptions, if any, are inapplicable here. For a collection of authorities covering the rule and exceptions thereto, see 67 A.L.R. 170.

The statements of Speer placed in evidence in this case, in some instances made hours after the accident complained of occurred, could in no sense be construed to be a part of the res gestae and none of the statements so made by Speer were admissible to prove liability of the partnership for the reason that there was never a relationship of principal and agent established.

What Speer said at the time of the accident, or thereafter, might be construed as a declaration, if it was, against him, but could not bind the other defendants.

In this case there was no competent proof, prima facie or otherwise, to establish the relationship of master and servant, or principal and agent, between Speer and the other defendants; and no competent proof that he was acting for or on behalf of the other defendants, or any of them, at the time of the damage and injury. Hence no liability of The Boise Valley Livestock Commission Company, or its members, was established.

One who affirms the existence of a relationship of master and servant, or principal and agent, as a basis for relief has the burden of proving the existence of such relationship. The fact that the defendant Speer had a credit account with the defendant partnership, if he did, and the further fact that some checks of Speer cleared through the defendant partnership, if they did, was no evidence at all, in my opinion, to prove the relationship of principal and agent, or master and servant at the time of the accident. Such evidence being entirely lacking, the motion for nonsuit and judgment for the partnership notwithstanding the verdict should have been granted.

GIVENS, C. J., concurs with KEETON, J.